PEARSON, Judge.
U. S. Properties, Inc., was the defendant in a suit for declaratory decree brought by Marwin Corp. U. S. Properties is the landlord and Marwin Corp. is the tenant in a 99-year lease agreement which covers certain vacant property located in the town of Bay Harbor Island, Dade County, Florida. Marwin Corp. as plaintiff sought by its complaint to have the court determine: a) whether or not a certain modification of the lease agreement was enforceable, b) whether or not the plaintiff as lessee had complied with all the terms and conditions of the 99-year lease in such a manner as to require the defendant to execute a mortgage submitted by the plaintiff to the defendant, and c) other supplemental relief in the nature of specific performance and damages. The final decree found: a) that the modification of the lease agreement was unenforceable, b) that the plaintiff as lessee had complied with the terms of the 99-year lease setting forth the conditions under which the defendant, U. S. Properties, lessor, must join in the mortgage submitted, and c) -granted the specific perform- *373 anee of the lease provision and denied supplemental relief in the nature of damages. From this decree U. S. Properties has appealed and Marwin Corp. has cross assigned as error the refusal of the court to grant damages. Upon our holding that the tenant Marwin Corp. had not complied with that portion of the lease agreement which provided that the lessee should procure and assign to the lessor a commitment from an institutional lender to make a permanent mortgage, the final decree is reversed in part and under this holding we find it unnecessary to consider the cross assignments
U. S. Properties owns the real estate above mentioned. Marwin Corp. by assignment became the owner of a 99-year lease thereon in 1957. The lease provided that an apartment building of not less than ten units should be constructed and that U. S. Properties, as fee owner, could be required to join in the execution of a temporary construction mortgage and a permanent mortgage under certain conditions therein set forth. Prior to the assignment of the leasehold interest to Marwin Corp., the then lessees presented a mortgage to U. S. Properties for officers’ signatures. This mortgage was executed but was never recorded and was subsequently returned to U. S. Properties with the signatures of the officers obliterated. Thereafter, at the time when the original lessees were assigning their leasehold interest to the plaintiff, the latter was advised by the defendant that it had already complied with the provision to subordinate its fee simple interest. The original lessees brought an action against the defendant to determine whether the defendant had complied with the subordination provision because of its execution of the unused mortgage. The suit was dismissed and an agreement modifying the 99-year lease was executed. The terms of this modification agreement are not in themselves germane to this opinion. At a time subsequent to the modification, Mar-win Corp. presented a temporary construction mortgage in which U. S. Properties refused to join, upon the basis that Marwin Corp. had not complied'with the terms of the lease, which required that a permanent mortgage commitment which could be assigned to U. S. Properties be submitted simultaneously.
The provision to which reference was made is contained in article XIII, section B(3), of the 99-year lease and is in the following language:
“The Lessees shall have first procured a commitment from an institutional lender to make the permanent mortgage and shall, simultaneously with the joinder by the Lessor in the temporary construction mortgage, assign the commitment to the Lessor upon the condition that if the Lessees default in the building obligation the Lessor itself may have the benefit of the permanent mortgage committed to be made * * * ” (Emphasis added).
The chancellor found that U. S. Properties, the landlord, could not refuse to execute the construction mortgage upon the basis that the mortgage commitment was not assignable because Marwin Corp. had fully complied with the above quoted provision. The portion of the findings of the chancellor pertaining to this issue is as follows:
“The lease further provides that the lessee may in conjunction with the construction of such building require the lessor to join with the lessee in the execution of a temporary construction mortgage and a permanent mortgage. The lease outlines in detail the steps which must be taken by the lessee in order to require the lessor to join in the execution of such mortgages.”
íj; ijs sj:
“The plaintiff-lessee did attempt to commence the construction of an apartment building upon the premises prior to February 1, 1958. The plaintiff in its attempt to comply with the terms and conditions of the 99 Year Lease, *374 which would require the defendant to join in the execution of a mortgage, did the following:
“(a) On November 21, 1957, the plaintiff delivered to the defendant the original of a commitment letter which it obtained from the Prudential Insurance Company of America. This mortgage commitment letter provided for a loan in the sum of $325,000.00 and further provided that the note should be signed by Arthur Levine, Herbert Levine and Charles Winston, officers of the plaintiff corporation, who should be jointly and severally liable thereon until the amount due on said note be reduced to $225,000.00.
“(b) Simultaneously with the delivery of the commitment letter, plaintiff delivered to the defendant a copy of the Plans and Specifications for a proposed building to be erected on the subject premises.
“(c) On January 14, 1958, plaintiff delivered to the defendant a mortgage in favor of the Miami Beach First National Bank to be signed by the plaintiff and defendant, which mortgage was to be used for the purpose of providing construction money for the proposed building. The said mortgage required completion of the proposed building on or before July 1, 1958, and provided that the maximum amount ' which the mortgage would secure was the sum of $487,500.00. Upon objection by the defendant, the mortgage was amended so that the completion date was made August 1, 1958, and the maximum amount which the mortgage secured was reduced to $325,-000.00.”
* * * * * *
“(f) On January 24, 1958, the plaintiff executed and delivered to the defendant an assignment whereby it did assign, transfer and set over unto the defendant all of its right, title and interest in the loan commitment obtained from the Prudential Life Insurance Company of America.”
Based upon these findings the chancellor concluded as follows:
“Although the Court finds that the plaintiff was not required to commence the construction of any building on or before the specific date of February 1, 1958, the Court further finds that the plaintiff fully complied with all of the terms and conditions of Articles XII and XIII of the 99 Year Lease and that upon the full compliance by the plaintiff with the terms and conditions of the lease, the defendant, U. S. Properties, Inc., was required to join with the plaintiff in the execution of a temporary construction mortgage and/or permanent mortgage. Article XIII, Paragraph B. (3), requires the lessee to procure a commitment from an institutional lender to make the permanent mortgage and simultaneously with the joinder by the lessor in the temporary construction mortgage to assign the commitment to the lessor. The Court finds that the plaintiff obtained a commitment from an institutional lender of the type contemplated by the 99 Year Lease. The testimony indicated that this commitment letter was a typical commitment letter issued by institutional lenders in the area and identical in form and content with several hundred which had been negotiated by the expert witness, E. E. Pearce, as an officer of Lawyers Title Insurance Corp. in charge of the Construction Loan Department. The plaintiff without first requiring the joinder by the defendant in the temporary mortgage did assign all of its right, title and interest in this loan commitment to the defendant. The commitment letter provided that the notes should be signed by three individuals, Arthur Levine, Herbert Levine and Charles Winston, however, the contention of the defendant that the commitment letter was unassign *375 able by virtue of this fact is without merit. The evidence indicates that these three individuals became contractually bound to join in the execution of the note and the right to require them to do so could be effectively passed on to the defendant by assignment. The plaintiff obtained a typical commitment from an institutional lender within the contemplation of the lease and assigned their rights to the same to the defendant insofar as the same were assignable as a matter of law.”
The objection which the landlord, U. S. Properties, raised as basis for its refusal to join in the execution of the temporary ■construction mortgage is that the commitment letter from Prudential Life Insurance ■Company requires the signatures of Arthur Levine, Herbert Levine and Charles Winston upon the note. The controlling question then is whether or not a commitment which requires the personal signatures of individuals, who are not individual parties to the lease agreement, is assignable under that provision of the lease agreement above quoted which provided: “shall simultaneously with the joinder by the lessor in the temporary construction mortgage, assign the commitment to the lessor upon the condition that if the lessees default in the building obligation the lessor itself may have the benefit of the permanent mortgage committed to be made * *
The appellant urges that Marwin Corp. could not effectively assign a commitment to make a mortgage it had .received from Prudential Life without the consent of such third party when the commitment required that the three individuals also be liable for payment of part of the mortgage ■debt in addition to the liability of the lessee, Marwin Corp. The provision of the lease under consideration is designed to make certain that the funds are available for the construction of a building after it is ■started. U. S. Properties refused to join in the execution of the temporary construction mortgage contending that the •commitment to make a permanent mortgage had not been effectively assigned to it so that it would have the benefit of that mortgage loan if the Marwin Corp. failed to complete the construction of the building.
It is not disputed that Marwin Corp. secured a commitment from Prudential to make a permanent mortgage of $325,000. The reason that Marwin Corp. could not effectively assign the commitment was the provision contained in the commitment requiring certain individuals to sign the mortgage note so that they would be jointly and severally liable on that note until the amount oustanding was reduced to $225,000. The general principle of law which establishes that the assignee might not have benefit of the commitment is that where the terms of a contract are such as to show that reliance was placed on the personal credit of a party, its benefits cannot be assigned. Frissell v. Nichols, 94 Fla. 403, 114 So. 431; cf. Rosello v. Hayden, Fla.1955, 79 So.2d 682.
The logic of this situation can be readily seen if it is considered that the landlord as assignee would be in a precarious condition should the lessee breach the lease and fail to complete the building. Under such conditions the lessor would be required to take over the job and complete the building. This is all well and good provided the mortgage loan funds are available to the lessor. Otherwise the lessor is placed in the condition of attempting to raise $325,000 to retire the temporary construction mortgage which was to be paid by the permanent mortgage committed to be made when the job was completed. The lessor would be in the position of being unable to meet the requirements of the Prudential commitment letter unless the three individuals signed the note.
The appellee, Marwin Corp., urges that the agreement of the three individuals to sign this note was reduced to writing and presented with the commitment letter and the assignment. But, is this agreement sufficient? It is altogether possible that the *376 lessor’s remedy in damages for the breach of the agreement of the three individuals to sign the note might not be adequate. It would depend entirely upon the financial condition of the individual who might refuse to sign. In addition, the signing of the note for the permanent mortgage is an event to occur in the future and it is uncertain what the condition, financial or otherwise, of the three individuals may be at any given time in the future. As pointed out by the appellant it is even possible that one or more of these individuals may be dead at such time. It is apparent that such a situation would completely nullify the assignment and the lessor would be without benefit of a commitment. Frissell v. Nichols, supra.
We conclude therefore that the finding of the chancellor that the lease agreement had been complied with so that the lessor, U. S. Properties, was in default for its failure to sign the temporary mortgage is in error. Having reached this conclusion it is unnecessary to consider appellant’s second and fourth points and the asssign-ments thereunder.
It is advisable, however, to consider appellant’s point urging that the chancellor erred in his holding that the modification agreement entered into subsequent to the making of the lease was void and unenforceable. The chancellor’s finding on this particular was as follows :
“No loan was ever consummated by the plaintiff’s assignors, Irving Tarno-pol and Jack Fox, the instrument was never recorded or used, but was held in escrow by the lessees’ attorney and was .returned to the lessor with the evidence of the lessor’s execution of the same obliterated. Since the lessor never joined in the execution of any mortgage as contemplated by the lease, the obligation to so join in a temporary construction and/or permanent mortgage remained in full force and effect and there was no consideration to support the promises of the plaintiff contained in the Modification of Lease Agreement dated January 31, 1957, which .required the plaintiff to commence the construction of a building on or before the specific date of February 1, 1958, and further requiring the plaintiff to construct a building twice the size of that contemplated by the terms of the original lease. The Court, therefore, holds that the Modification of Lease Agreement dated January 31, 1957, is void and unenforceable insofar as the same imposes obligations upon the plaintiff which are not contained in the original 99 Year Lease.”
The appellant concedes that it had at one time taken the position that the modification agreement was effective and did in the instant suit counterclaim for termination of the lease because of the lessee’s failure to comply with one of the terms of the modification agreement. It also agreed that after the entry of the final decree and pending this appeal, the appellant has accepted rent of the appellee, tenant. We conclude that the acceptance of rent is an inconsistent position to that taken on this appeal as it pertains to the modification agreement. The acceptance of such rent, subsequent to the alleged breach by the lessee, waives any right the lessor may have to terminate the lease. Farmers’ Bank & Trust Co. v. Palms Pub. Co., 86 Fla. 371, 98 So. 143. The waiver of this claim is a waiver of the point in the brief urging that the court erred in finding that the modification agreement was not in effect. For this reason we do not further consider this point.
Having determined that the appellee improperly prevailed in the trial court it is unnecessary to consider the appellee’s contention that he should have been awarded damages since the award of damages was conditioned upon his prevailing in the lower court.
For the reasons above set forth the final decree of the chancellor is reversed *377 insofar as it held that the plaintiff, Mar-win Corp., has complied with the terms and conditions of articles XII and XIII of the lease, and the final decree is affirmed insofar as it held that the requirements of the modification of the lease agreement that the plaintiff should commence the construction of a building on or before February 1, 1958, are unenforceable. The cause remanded for the entry of a final decree in accordance with the views herein expressed.
Affirmed in part and reversed in part.
HORTON, C. J., and CARROLL, CHAS., T., concur.