510 So.2d 1135 (1987)
C.F. O'BERRY, et al., Appellants,
v.
Celestine E. GRAY, et al., Appellees.
No. 86-1940.
District Court of Appeal of Florida, Fifth District.
August 6, 1987.
*1136 Tim Haines and Ralph J. McMurphy, of Green, Simmons, Green, Hightower & Gray, P.A., Ocala, for appellants.
E.G. Musleh, P.A., Ocala, for appellees.
COWART, Judge.
In 1965 George and Theola Wilkerson owned a large tract of land on which they and a relative resided. Appellants wanted to purchase the entire tract, but the Wilkersons wanted to reserve two tracts of two acres each upon which their residence and the relative's separate residence were located. A written agreement was negotiated under which the appellants bought the entire tract excepting the two tracts of two acres each, and as a part of the purchase consideration, appellants received two option agreements relating to the two reserved two-acre parcels. By one of the option agreements, the Wilkersons granted the appellants "the privilege of purchasing upon the death of the survivor of us" the Wilkersons' two acres for the sum of $5000. The agreement further provided the option would
continue for 60 days after notification of our death, and shall thereupon cease, terminate, and become null and void unless the Optionee shall within 60 days after the death of the survivor of us, notify the survivor's personal representative or his or her heirs, in writing that the Optionees desire to exercise this Option... .
In 1976, after George died, Theola quitclaimed the two-acre tract to appellee Celestine E. Gray. On January 18, 1982, Theola died and appellants promptly received notice of her death and timely and duly exercised their option to purchase. Appellees, heirs of Theola, refused to convey and appellants filed suit to have the option agreement reformed to correct a scrivener's error in the property description and for specific performance of the option agreement. The trial court entered a summary judgment in favor of the heirs and the appellants/optionees appeal.
The trial court gave three reasons for entering summary judgment. First, instead of considering appellants' count for reformation, the trial court denied appellants' count for specific performance on the ground that the legal description in the option agreement
does not sufficiently describe any parcel of land in that it does not close mathematically to the point of beginning; accordingly, the option agreement would be a stranger to the chain of title for the land, the subject of this action.
Appellees submitted no evidence on this issue other than the description itself. A land description is legally sufficient if it will enable a surveyor to ascertain, identify, and locate the land intended to be described.[1] It is part of the surveying profession's expertise to identify and locate *1137 tracts of land imperfectly described.[2] The trial court had insufficient evidence to adjudicate that the land description in question was legally inadequate. Because the two-acre parcel described was cut out of the larger parcel conveyed by the Wilkersons to appellants, the two-acre tract in question, the description of which was prepared by an engineering firm, should be relatively easy to locate by any competent surveyor.[3]
Second, based solely on a comparison of the $5000 purchase price provided in the option agreement with an unsworn appraiser's opinion that the two acre tract in question currently is worth $239,000, the trial court concluded as a matter of law that the appellants, by their action for specific performance of the option, "were attempting to obtain an unconscionable advantage over the defendants," citing Pepple v. Rogers, 104 Fla. 462, 140 So. 205 (1932) and Triumph Metal Products, Inc. v. Snyder, 133 So.2d 344 (Fla. 2d DCA 1961). The appellees presented no evidence of the circumstances surrounding the parties' execution of the original agreement providing for the option. Therefore, there is no evidence of procedural unconscionability.[4] The only evidence of substantive unconscionability is the appraisal of value in 1986 as compared with the option exercise price agreed to in 1965. This is insufficient as a basis for a finding of substantive unconscionability. See Garrett v. Janiewski, 480 So.2d 1324 (Fla. 4th DCA 1985), rev. denied, 492 So.2d 1333 (Fla. 1986); State v. De Anza Corp., 416 So.2d 1173 (Fla. 5th DCA), rev. denied, 424 So.2d 763 (Fla. 1982). The consideration for the option agreement was not the $5000 the heirs of the Wilkersons (the appellees) were to receive if and when appellants exercised the option. The consideration the Wilkersons received for the option was a part of the total consideration they received in 1965 from appellants for their larger parcel of land and their execution of the two option agreements. Who, besides the Wilkersons, could say how much the money the Wilkersons received from appellants in 1965 for the land and option agreement meant to them, or how little it may have meant to the Wilkersons in 1965 what the value of the two acres might be after they had died?
Lastly, the trial judge, citing Inglehart v. Phillips, 383 So.2d 610 (Fla. 1980), held as a matter of law that the option agreement was void and unenforceable as a restraint on alienation. First, it should be noted that the option agreement in two places describes the option as relating to a purchase "upon the death of the survivor of us." The agreement for the option itself referred to the option from George and Theola Wilkerson being exercised "upon the death of the survivor thereof." After so providing, the double-spaced option agreement in a third place states that the option shall "continue for a period of 60 days after/our death." On the vacant line above the slash mark, between the words "after" and "our," in the space between the regular lines, are typed the words "notification of." It is on the basis of these two words that appellees argue, and the trial court held,
2. That the Option Agreement is a fixed-price agreement of unlimited duration in that it requires notification of the death of the last surviving spouse be *1138 given to the Plaintiffs and keeps the Option open until such time as that notice is received; if that notice is not received, the Option, and resulting restraint on alienation, continues indefinitely into the future, with no date of termination and is void under the ruling as set forth in Iglehart v. Phillips 383 So.2d 610 Supreme Court Fla. 1980.
We cannot agree with the trial court's interpretation of Inglehart or its application to the facts in this case. It is obvious that the parties intended for the Wilkersons to reside on their two acres during their joint lives and the life of the survivor, and that the appellants would have 60 days after the survivor's death to exercise the option to purchase; the words "notification of" were added to the option's time limitation provision when someone became concerned that the 60 day period might go by before appellants learned of the survivor's death. This option is not subject to the infirmity of indefinite duration[5] with which Inglehart was concerned because even if the option is interpreted as appellees contend, appellees, as owners of the legal title, could at any time unilaterally limit the duration of appellants' equitable rights to enforce their purchase option merely by notifying appellants of Theola's death, thereby commencing running of the 60 day limitation on appellants' right to exercise their purchase option. As a matter of fact, appellants exercised their option within sixty days of Theola's death.
The summary judgment in favor of appellees is reversed and the cause remanded for further proceedings.
REVERSED and REMANDED.
DAUKSCH, J., and BEVERLY, V.Q., Associate Judge, concur.
NOTES
[1] See Mitchell v. Moore, 152 Fla. 843, 13 So.2d 314 (1943); Campbell v. Carruth, 32 Fla. 264, 13 So. 432 (1893).
[2] See J. Grimes, Clark on Surveying and Boundaries § 301-326 (4th ed. 1976) (Evidence to Identify and Locate Tracts, Corners and Lines).
[3] The original agreement providing for the option as to the two parcels of two acres each provides that "the exact description shall be determined by an accurate survey ... the corners thereof being set with permanent monuments." Monuments on the ground are the best evidence of the actual survey and control over defects and inconsistencies in any plat of survey or written description of the survey. See Tyson v. Edwards, 433 So.2d 549 (Fla. 5th DCA), rev. denied, 441 So.2d 633 (Fla. 1983).
[4] Appellees argue that because of the "Deadman's statute" (section 90.602, Florida Statutes), appellants are barred from presenting evidence of the circumstances surrounding the negotiation of the option agreement. Appellees forget that the unconscionability issue is an affirmative defense and that appellees, as movants for summary judgment, also had the burden to demonstrate by evidence that there was no genuine issue but that there was procedural unconscionability.
[5] For a general discussion of this and similar problems see Annot., Independent Option to Purchase Real Estate as Violating Rule Against Perpetuities or Restraints on Alienation, 66 A.L.R.3d 1294 (1975); Annot., Preemptive Rights to Realty as Violation of Rule Against Perpetuities or Rule Concerning Restraints on Alienation; 40 A.L.R.3d 920 (1971); Annot., Validity of Option to Purchase Realty as Affected by Indefiniteness of Term Provided for Exercise, 31 A.L.R.3d 522 (1970).